DIEGO GUERRERO NOBLE, Petitioner, *v.* COURT OF TAX APPEALS OF PUERTO RICO ET AL., Respondents.

No. 369. Argued March 18, 1942.—Decided April 14, 1942.

*Diego Guerrero Noble,* in pro. per., *Luis Dubón, Félix Ochoteco,* and *Benicio Sánchez Castaño* for petitioner. *Juan E. Soltero Peralta* for respondents. *R. Soltero Peralta,* as *amicus curiae.*

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The petitioner, an attorney at law duly admitted to practice as such by this court in this island, on behalf of his client J. Pérez & Co., Sucrs., filed, in the Court of Tax Appeals of Puerto Rico, a complaint praying that the Treasurer of Puerto Rico be adjudged to return to complainant

the amount of certain taxes paid under protest. That body refused to allow the proceeding to be continued, on the ground that the petitioner had not been admitted to practice before said court, it being required for such admission that the petitioner should comply with the requisites prescribed by Rules Nos. 2 and 3 of the tribunal, notwithstanding the authorization granted to him by the Supreme Court.

The first of the aforesaid rules, under the title "Admission to Practice," requires from attorneys admitted to practice before the Supreme Court of Puerto Rico and before the United States District Court for Puerto Rico, to file an application for admission to practice before the said Court of Tax Appeals, and to attach thereto a certificate of the secretary of the court in which the applicant was admitted to practice and another certificate from the Secretary of the Bar Association of Puerto Rico, to the effect that the applicant has been so admitted and that his license has not been canceled or suspended. The applicant, according to said rule, must show that he has never been suspended or disbarred from the practice of his profession; he shall state under oath that he has carefully studied the Rules of Practice of the Court of Tax Appeals of Puerto Rico, as well as the tax legislation and its administrative regulations, and that he considers himself duly qualified to assume the representation of clients who may be parties to cases brought before that tribunal. Even though the applicant may be an attorney admitted to practice his profession by this court, the Court of Tax Appeals, according to Rule 2, may deny the application for admission if in its judgment said applicant does not fulfill the requirements for practice before that tribunal. If the application is approved, the candidate is subject to an oath of service, similar in its terms to the one taken by him before the Supreme Court when admitted to the practice of his profession.

By virtue of Rule 3 and under the heading "Suspension and Disbarment," the said tribunal reserves to itself the right to suspend or disbar any person after being admitted, when in its judgment said person does not possess the req-- uisite qualifications to represent others, or is lacking in moral character and integrity necessary to practice, or for improper professional conduct. The said Rule 3 further prescribes that no person shall be suspended for more than 60 days, or disbarred until he has been afforded an opportunity to be heard; that "the court may immediately suspend any admitted person for not more than 60 days, for contempt or misconduct during the course of any proceeding"; and, lastly, "that any false information in the application for admission or in any document filed by the person admitted, shall be sufficient cause for the disbarment of such person from practice before the court."

Alleging that the respondent tribunal lacks power to establish such requirements as to him, and that on the contrary it has a ministerial duty to admit him to practice so long as his license, issued by the Supreme Court of Puerto Rico, has not been suspended or canceled by the latter court, the petitioner instituted this mandamus proceeding to compel the respondents to comply with the alleged duty. After the alternative writ had been issued, the respondents appeared in opposition to the relief sought by the petitioner. For a better understanding of the questions to be decided in this proceeding, it is advisable to study first the nature of the tribunal involved, as well as the powers which have been conferred upon the same. For this purpose, let us examine §§1, 3, 4, 5, and 7 of an "Act to create the Court of Tax Appeals of Puerto Rico; to determine its organization, authority and operation; to establish its jurisdiction, . . . ." approved May 13, 1941 (Laws of 1941, p. 1038).

By §1 thereof the Court of Tax Appeals is created, composed of a president and four associate members. The

president shall be the executive officer of the court, in charge of enforcing all its decisions, orders, and resolutions, and shall be a lawyer in the active practice of his profession in Puerto Rico for a term of not less than 10 years. Of the four associate members, one shall be a certified public accountant, of reputation and experience; another shall be a civil engineer of reputation and having practiced his profession in Puerto Rico for a term of not less than 10 years; another shall be an agricultural engineer with qualifications similar to those of the civil engineer; and the other shall be a business man or economist versed in tax matters, a fact he shall establish through the work he may have done in the line prior to his appointment.

Section 3 prescribes that the court shall operate with a quasi-judicial character, and shall make such rules as may be necessary to regulate all proceedings before the same; that said rules shall specifically provide that every claim before the court shall be commenced by the filing of a sworn complaint by the complainant personally or through a duly authorized representative, and in said complaint he shall clearly and concisely set forth the facts and legal principles on which he relies for his claim. The rules shall also provide for service of every complaint on the Treasurer of Puerto Rico, by delivering a copy thereof to that officer at his office, and he shall answer the same in writing and in all cases he shall appear before the court, represented by an officer of the Department of Justice of Puerto Rico. Section 3 also prescribes that after a complaint has been filed, all subsequent proceedings, including the hearing of the evidence which may be necessary to render a decision, shall be determined by the court in its rules of procedure; and in those cases which are not clearly specified by those rules, the provisions of the Code of Civil Procedure, which regulate the procedure before the district courts, shall apply. Jurisdiction is further conferred upon it to revise the as-

sessment and reassessment of personal and real property, and to take cognizance of all claims which may be brought before said tribunal by interested parties, against the decisions of the Treasurer of Puerto Rico which may affect the levy and payment of property taxes, income taxes, and inheritance taxes. But this jurisdiction shall not be invoked until an administrative decision has been rendered by the Treasurer of Puerto Rico on the matter in controversy.

Section 5 prescribes that after the issue has been formed by means of the complaint and the answer, the court shall proceed to hear the necessary evidence and to carry out all pertinent acts for its best enlightenment, in order to render a just decision, according to law. After the evidence has been heard, and after any additional investigation ordered by the court has been completed, the court shall proceed to consider it and shall render a decision by a majority of the members thereof. Such decisions shall be final; but the aggrieved party may, within thirty days after the decision has been rendered, apply to the Supreme Court for a writ of certiorari to review the proceedings. But the latter court, in passing upon the case, shall base its decision exclusively on the facts as the same appear from the record. In other words, it can not consider any additional evidence; and it is further provided that the institution of such proceeding for review shall not operate to stay the execution of the decision sought to be reviewed, which shall be enforcible forthwith, subject, of course, to any judgment rendered by the Supreme Court.

Lastly, §7 authorizes the Court of Tax Appeals to make regulations governing its internal operation.

The provisions of the above-cited act clearly show that the practice before the Court of Tax Appeals requires legal knowledge and technique. In order to be able to practice before said court, it is necessary, in the first place, that the practitioner should know the fundamental principles of law

and especially those relating to the tax statutes, not only to enable him to advise his client as to whether or not the claim lies, but also to be in a position to prepare the complaint, in which he must set forth the legal principles forming the basis of the claim. After the issue has been joined, and during the hearing of the case, he will need to have knowledge of the rules of procedure, particularly those pertaining to the Law of Evidence in so far as the same may be applicable, not only in order to secure an orderly and correct presentation of his evidence, but also to prevent, on behalf of the interests entrusted to him, the introduction by his opponent of inadmissible or irrelevant evidence tending to deviate the court from the real matter in controversy. A correct presentation of the evidence is of exceptional importance in the practice before said court, as the remedy for review by the Supreme Court which the law grants is not the one formerly authorized for reviewing the decisions of the Board of Review and Equalization, which consisted in an ordinary action before the district court, where evidence, material under the new pleadings, was offered anew, and any error of procedure committed by a party before said board could not in any way prejudice such party in the new action before the district court. Within the certiorari proceeding authorized for a review of the decisions of the Court of Tax Appeals, no evidence which does not appear from the record can be considered, and, naturally, this requires that the practitioner should have correctly presented his case in order that the Supreme Court, when reviewing the proceedings, may be in a position to do complete justice.

Much has been written as to what constitutes the practice of law, and we will not unnecessarily extend this opinion by discussing the various phases of the exercise of the profession of the law. It will be sufficient for our purpose to refer to an article by Frederick C. Hicks and Elliot R. Katz, entitled "The Practice of Law by Laymen and Lay

Agencies," published in 41 Yale L. J. 69, and to the dissenting opinion of Justice Stephens in the case of *Merrick et al.* v. *American Security & Trust Co.,* 107 F. (2d) 278, where the question is amply discussed. Inasmuch as the phase involved in the present case is the practice before a tribunal or board having a quasi-judicial character, we shall confine our attention to that phase. In a monograph appearing in 111 A.L.R. 19, 32, with reference to this question, it is said:

"In determining whether participation on behalf of another in hearings and proceedings before a board or commission constitutes the practice of law, the character of the act, and not the place where it is performed, has been said to be the decisive factor; and where the application of legal knowledge and technique is required, the activity constitutes such practice, even if conducted before a . . . . board or commission."

See also *People ex rel. Chicago Bar Asso.* v. *Goodman,* 111 A.L.R. 1.

If the above-stated test is applied to the form in which the Court of Tax Appeals of Puerto Rico operates in accordance with the law creating the same, it will be readily concluded that said court exercises quasi-judicial functions. If the jurisdiction of that tribunal is of a quasi-judicial character, its doors should be open to all attorneys as if it were a court of justice. This being so, can it be required, as a condition precedent to practice before said tribunal, that the petitioner should comply with the requisites prescribed in the above-mentioned rules?

The power to admit to the practice of law has always been an exclusive prerogative of the judicial department. This prerogative is deeply rooted in the common law. From an article by Blewett Lee, published in 13 Harv. L. Rev. 233, we take the following extract regarding the history of the admission to practice law:

"In 1292, Edward I. made an order by which he appointed the Lord Chief Justice of the Court of Common Pleas and the rest of his fellow Justices of that Court; that they, according to their

discretion, should provide and ordain from every county certain attorneys and apprentices of the best and most apt for their learning and skill who might do service to his court and people, and those so chosen and no other should follow his court and transact the affairs thereof; the said King and his Counsel then deeming the number of seven score to be sufficient for that employment; but it was left to the discretion of the said Justices to add to that number or diminish as they should see fit.    (1 Pollock & Maitland, History of English Law, 194; Dugdale's Orig. Jurid. 141.)    The profession of an attorney was placed under control of the judges, and the discretion to examine applicants as to their learning and qualification and to admit to practice was exercised from that day by the judicial department of the English government, and no legislation sought to deprive the court of the power in that respect, or to invest it in any other branch of the government.    Parliament legislated upon the subject, but the legislation was of a character to exclude persons unfit to practice, who threatened the public welfare through ignorance or untrustworthiness.    The statutes always recognized that the admission of attorneys was a matter essentially belonging to the courts and a matter of judicial discretion, and only sought to protect the public against improper persons.    The first of these acts was the 4 Henry IV., c. 18, passed in 1403.    The attorneys had increased to the number of two thousand, and the act reciting that damages and mischiefs ensued from the great number of attorneys unlearned in the law, ordained and established that all attorneys should be examined by the justices, and by their discretion their names put in the roll, and the other attorneys put out by the discretion of said justices, and their masters for whom they were attorneys should be warned to take others in their places, so that in the meantime no damage nor prejudice should come to their said masters.    (Maugham, Attorneys, Ap. 9.)    In 1413, by the 1 Henry V., undersheriffs, sheriffs, clerks, receivers, and bailiffs were excluded from practising as attorneys, because 'the king's liege people dare not pursue or complain of the extortions and of the oppressions to them done by the officers of sheriffs'.    In 1455, by the 33 Henry VI., c. 7, Parliament limited the number of attorneys for Suffolk, Norfolk and Norwich, reciting that the number has increased more than eighty, 'Most of whom, being not of sufficient knowledge came to fairs, etc., inciting the people to suits for small trespasses.'    In 1606, by the 3 James I., c. 7, it was attempted to further regulate attorneys to the same end.    (Maugham, Attorneys, Ap. 13.)    Parliament did not, by any of these acts, undertake to determine the

amount of learning which would qualify a person for admission. The courts from time to time made their rules regulating the admission of attorneys, and on occasion provided for the appointment of a committee or board of examiners. (Maugham, Attorneys, Ap. 14, 16.) Blackstone says (3 Com. 26), 'These attorneys are now formed into a regular corps; they are admitted to the execution of their office by the superior courts of Westminster Hall . . . No man can practise as an attorney in any of those courts, but such as is admitted and sworn an attorney of that particular court; an attorney of the Court of King's Bench cannot practise in the Court of Common Pleas, nor *vice versa* . . . So as early as the statute 4 Henry IV., c. 18, it was enacted that attorneys should be examined by the judges, and none admitted but such as were virtuous learned, and sworn to do their duty.'' (Pages 238–240.)

That prerogative of the judicial power which originated in a decree of Edward I of England in 1292, to this day remains unchanged. In the case of *People ex rel. Chicago Bar Asso.* v. *Goodman, supra,* at page 4, the Supreme Court of Illinois said:

"The power to regulate and define the practice of law is a prerogative of the judicial department as one of the three divisions of the government created by article 3 of our Constitution. The legislative department may pass acts declaring the unauthorized practice of law illegal and punishable. Such statutes are merely in aid of, and do not supersede or detract from, the power of the judicial department to control the practice of law. *In re Day,* 181 Ill. 73, 54 N. E. 646, 50 L.R.A. 519; *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n* (R. I.) 179 A. 139, 100 A.L.R. 226. The power is inherent in this court to prescribe regulations for the study of law and the admission of applicants for the practice of that profession. *People* v. *People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901; *In re Day, supra.* It follows, as an incident to such power, that this court has jurisdiction to discipline or disbar, for cause, attorneys licensed by it.''

In this island the separation of governmental powers into legislative, executive, and judicial also exists, and §40 of our Organic Act, in defining the judicial power, provides that the latter shall be vested in the courts and tribunals of

Puerto Rico. It is clear that, as our Supreme Court is the highest of those tribunals and courts, it is incumbent upon it, to the exclusion of the others, to exercise a prerogative similar to the one granted in 1292 by Edward I of England to the Court of Common Pleas. Accordingly, it has heretofore exercised the same uninterruptedly and has defended and asserted it against all attempted usurpations. Thirty-one years ago, when in the case of *Coll* v. *Leake, District Judge,* 17 P.R.R. 823, 832, a district court in the course of a proceeding made an order which was tantamount to a temporary suspension of an attorney from the exercise of his profession, this court speaking through Mr. Justice Mac Leary said:

"Then the second question arises for consideration. What power does a district court in Porto Rico have to suspend an attorney from the exercise of his functions as an officer of the court, or to partially do so, by striking his name from the docket as an attorney in a particular case? No such authority exists.

"Under our laws, the district courts have no jurisdiction to admit attorneys and counsellors to practice, nor can they be suspended or disbarred by the action of these courts. These functions reside exclusively in the Supreme Court of Porto Rico, and the method of their exercise is precisely marked out by the statute, (Revised Statutes of Porto Rico, sec. 39 to 43 and secs. amendatory thereof. Session Acts of 1909, pp. 100–102; secs. 9 and 10 of Act of March 11, 1909.)"

Less than three years ago, in the case of *Ex parte Jiménez,* 55 P.R.R. 51, 52, this court, through Mr. Justice Travieso, again defended that power, thus:

"The admission of a person to the practice of law is by its nature a purely judicial function. Among the inherent powers of the judicial branch of our Government, is that of determining the requisites which must be complied with and the qualifications which applicants for a license to practice as attorneys before the courts should have."

As an acknowledgment of said power of the Supreme Court, our Legislature when organizing the Bar Association

of Puerto Rico by Act No. 43, approved May 14, 1932 (Laws of 1932, p. 522), provided in §4 thereof that "All attorneys-at-law who are admitted to practice in the Supreme Court of Puerto Rico shall be members of the Bar Association ... " and by §12 of the act it excluded from the practice of the profession any person not so admitted, when it provided:

"Section 12.—Every person who, without having been duly admitted or licensed to practice the profession as provided in this Act, or who during the suspension of such license practices as a person qualified therefor, or who announces himself as such, or who tries to lead others to believe that he is a practicing attorney, shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than one hundred (100) dollars or imprisoned for not less than two (2) months, or shall suffer both penalties."

Apparently, the rules of the Court of Tax Appeals, in so far as the admission of attorneys to practice before it is concerned, do not impair the power of this Supreme Court to determine who may exercise the profession of the law in the courts of justice and in bodies or boards having a quasi-judicial character. But once said rules are examined, it will be noted that full and absolute credit is not given to the decisions of this Supreme Court admitting applicants to the practice of law, since additional requisites are demanded without authority of law, from those attorneys, and the Court of Tax Appeals reserves to itself the power to refuse admission to them if, in its judgment and notwithstanding this court's declaration to the contrary, said attorneys are not qualified to practice before that tribunal, which also reserves to itself the right to temporarily or permanently suspend them from the exercise of their profession in said tribunal: a prerogative which, as we have seen, belongs to the judicial power represented by the Supreme Court of Puerto Rico.

The respondents, in support of their power to make the rules in question, cite the decision of the Supreme Court of the United States in the case of *Goldsmith* v. *U. S. Board of Tax Appeals,* 270 U. S. 117, 70 L. ed. 494. The doctrine

laid down in that case is perfectly applicable to the federal judicial system, where the bar is not centralized and where each court is entitled to have its own bar, entirely independent from those of the other federal courts. Thus we see that an attorney admitted to practice before the Supreme Court of the United States is not entitled to practice before any other federal court, unless he complies with the requirements for admission prescribed by the latter; and an attorney admitted to practice, say by the Circuit Court of Appeals for the First Circuit, is not, by that fact alone, entitled to practice before the district courts of said circuit. Moreover, if instead of forming a single federal judicial district, Puerto Rico were divided into two or more districts, each of the courts for those districts would have its own bar, distinct and independent from the bars of the others. See in this respect the article by J. S. Waterman, Dean of the Law School of the University of Arkansas, entitled "The Federal Bar: A Decentralized System of Admission and Disbarment," which was published in 20 A. B. A. Jour. 762, and the first paragraph of which reads as follows:

"The thirty-fifth section of the Judiciary Act of 1789, indicative of a judicial system composed of courts independent of each other, provided that each federal court should adopt rules governing admission of those who were to practice before it. This decentralized system of admission obtained in some of the colonies and therefore its adoption by Congress for the newly established federal courts was not an innovation."

See also the work of Frankfurter and Landis, entitled "The Business of the Supreme Court.—A Study in the Federal Judicial System," page 218.

As the Board of Tax Appeals is a federal agency having quasi-judicial powers, it has the faculty to organize its own bar, and since the admission of an attorney by a federal court does not entitle him to practice before other courts unless he is admitted by them, it is clear that such attorneys would not be entitled to practice before the Board of Tax Appeals,

either, just as they could not do so before other federal courts, unless they be admitted in accordance with the rules of said courts. Nor can the attorneys from the various states practice before the Board of Tax Appeals, for, a federal agency being involved, their admission by that board is necessary, since the admission granted by the Supreme Court of their respective states does not authorize them to practice before the federal courts without previous admission thereto.

In Puerto Rico, as in the States of the Union, the bar is centralized. There is only one bar, and the admission by the Supreme Court of Puerto Rico authorizes the attorney so admitted to practice in all the courts of the Island of Puerto Rico, as well as in all the insular boards or commissions exercising quasi-judicial powers.

■ Lastly, the respondents argue that the proper remedy is not mandamus but certiorari, because in accordance with the act creating and organizing the Court of Tax Appeals, its decisions can only be reviewed by certiorari by the Supreme Court of Puerto Rico. The decisions reviewable by certiorari are those which the former tribunal renders in the exercise of its jurisdiction; but the question raised by the petitioner is entirely foreign to the jurisdiction conferred by the Legislature on said tribunal; and as the petitioner has a clear right to practice before the Court of Tax Appeals, it being a ministerial duty of the latter to admit him to practice because of the sole fact of his having been admitted to the exercise of his profession by the Supreme Court of Puerto Rico and of his license not having been suspended or revoked, the issuance of a peremptory writ of mandamus to compel it to comply with said ministerial duty is proper.

Mr. Justice Travieso did not participate herein.